IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JUAN HOUSE,                      :
                                 :
          Plaintiff              :     CIVIL NO. 1:14-CV-01732
                                 :
     vs.                         :
                                 :
JOHN FISHER, et al.,             :     (Judge Rambo)
                                 :
          Defendants             :

## MEMORANDUM

## Background

On September 5, 2014, Juan House, an inmate confined at the State Correctional Institution at Smithfield, Huntingdon, Pennsylvania ("SCI-Smithfield"), filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 against thirty-five individuals employed by the Pennsylvania Department of Corrections. Doc. 1, Complaint. On September 9, 2014, the Clerk of Court sent House an Administrative Order directing him to pay the filing fee or file an authorization form within thirty (30) days. Doc. 7. House filed an authorization form on September 22, 2014. Doc. 8. Along with his authorization form, House filed a request for leave to amend his complaint and for a copy of his original

complaint.  By order of September 23, 2014, the court
construed House's motion for leave to proceed in forma
pauperis as a motion to proceed without full prepayment
of fees and costs and granted the motion. Doc. 11.
House was also authorized to file an amended complaint,
provided with a copy of his original complaint and
advised of the pleading requirements of Rules 8 and 20
of the Federal Rules of Civil Procedure. Id.

House filed an amended complaint on October 22,
2014. Doc. 13. The Defendants waived service of the
summons and amended complaint and on February 2, 2015,
filed a motion to dismiss the amended complaint. Docs.
24 and 26.  A brief in support of the motion was filed
on February 17, 2015. Doc. 35.

On February 10, 2015, House filed a motion for
leave to file a second amended complaint. Doc. 28.  By
order of March 12, 2015, the court granted that motion,
the second amended complaint was formally docketed, and
Defendants' motion to dismiss was deemed moot. Docs. 39
and 40.  The second amended complaint was filed pursuant
to 42 U.S.C. § 1983 against thirty-five individuals

employed by the Pennsylvania Department of Corrections. Doc. 40.

On March 26, 2015, Defendants filed a motion to dismiss the second amended complaint. Doc. 42. The following day, House filed a motion for leave to file a third amended complaint and an additional motion to amend was filed on April 9, 2015. Docs. 43 and 45. By order of April 10, 2015, the motions to amend filed on March 27 and April 9, 2015, were denied without prejudice and House was authorized to file a new motion to amend within 14 days accompanied by a proposed third amended complaint. Doc. 47. On April 27, 2015, House filed a motion for leave to file a third amended complaint along with the proposed third amended complaint. Doc. 50. By order of April 28, 2015, the court granted that motion and the proposed third amended complaint was formally docketed by the Clerk of Court. Docs. 51 and 52.

The third amended complaint was filed pursuant to 42 U.S.C. § 1983 against Dorina Varner, the Chief Grievance Coordinator at the Central Office of the

Department of Corrections and the following thirty-five
individuals employed or previously employed by the
Pennsylvania Department of Corrections at SCI-
Smithfield: Superintendent John Fisher; Deputy
Superintendents J. Whitesel and Lonnie Oliver; Captains
A. Grove and T. Sunderland; Lieutenants Rankin, Lidwell
and Abrashoff; Sergeants Keel, Britton, Henry, Borosky,
Hoy and Miller; and Corrections Officers Barnett, Reese,
Glass, Householder, Richards, Ruiz, Wasko, Mazurak,
Stevens, Brennan, Jones, Linberg, Rineheart, Dell,
Forston, Kenawell, Kennedy, Locke, McQughney, Wiser and
Bollman. Doc. 52.

House alleges that Defendants violated his
rights under the First, Fifth, Eighth and Fourteenth
Amendments to the United States Constitutions as a
result of multiple incidents occurring during a 7-month
period from January 25, 2014, through August, 2014. Id.
On August 17, 2015, Defendants filed a motion to dismiss
the third amended complaint and a motion to stay
discovery pending the disposition of the motion to
dismiss. Docs. 68 & 69. By order of August 18, 2015, the

court granted the motion to stay discovery. Doc. 70.
Subsequently, on August 31, 2015, Defendants filed a
brief in support of their motion to dismiss and House
filed a brief in opposition on September 22, 2015. Docs.
77 and 78. Defendants' motion to dismiss became ripe for
disposition on October 9, 2015, when Defendants elected
not to file a reply brief.

Because House's claims do not satisfy the
requirements for permissive joinder pursuant to Rule of
Civil Procedure 20(a), the court will grant Defendants'
motion to dismiss without prejudice and grant House the
opportunity to file a fourth amended complaint.
Furthermore, the claims against Defendants Varner,
Fisher, Whitesel, Oliver and Grove will be dismissed for
insufficient allegations of personal involvement in the
alleged wrongful conduct with leave to amend to cure the
defects and the conspiracy claims against all the
Defendants will likewise be dismissed for insufficient
allegations with leave to cure the defect by filing a
fourth amended complaint.  However, House's claims
against the Defendants in their official capacities will

be dismissed without leave to file a fourth amended complaint raising those claims.

**Motion to Dismiss**

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008)).  While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Id. at 570, 550 U.S. 544, 127 S.Ct. 1955 at 1974, 167 L.Ed.2d 929.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965.) "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" Id., 127 S.Ct. at 1965 (quoted case omitted).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11.  Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. at 211 (quoted case omitted).

In addition, because House complains about "prison conditions," the screening provisions,  28 U.S.C. § 1915(e), of the PLRA apply,[1] given that House

---

1.  Section 1915(e)(2), which was created by § 804(a)(5)

(continued...)

was granted in forma pauperis status to pursue this
suit.  The court's obligation to dismiss a complaint
under the PLRA screening provisions for complaints that
fail to state a claim is not excused even after
defendants have filed a motion to dismiss. See, e.g.,
Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir.
2000). Hence, if there is a ground for dismissal which
was not relied upon by a defendant in a motion to
dismiss, the court may nonetheless *sua sponte* rest its
dismissal upon such ground pursuant to the screening
provisions of the PLRA. See Lopez; Dare v. U.S., Civil
No. 06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June 21,
2007), aff'd, 264 Fed. Appx. 183 (3d Cir.2008).

---

1.  (...continued)
of the PLRA, provides:

> (2) Notwithstanding any filing fee, or any
> portion thereof, that may have been paid, the
> court shall dismiss the case at anytime if the
> court determines that (A) the allegation of
> poverty is untrue; or (B) the action or appeal
> (i) is frivolous or malicious; (ii) fails to
> state a claim on which relief may be granted;
> or (iii) seeks monetary relief against a
> defendant who is immune from such relief.

**Allegations of the Third Amended Complaint**

The court has thoroughly reviewed the third amended complaint including the documents House attached as exhibits thereto and will at this point set forth the factual averments made by House.

At some point on or before the morning of January 25, 2014, House had been placed on cell restriction in his housing unit, KA Block, at SCI-Smithfield. Doc. 52, Third Amended Complaint, at 6-7, ¶¶ 41-44.  On the morning of January 25, 2014, House confronted Defendant Borosky and began arguing about being placed on cell restriction. Id. & Doc. 52-1, Exhibits, at 12 (Official Inmate Grievance). House also requested that he be permitted to talk to a lieutenant. Id.  House was then ordered to return to his cell, but he refused. Id. He was then handcuffed and escorted to the housing unit's TV room by Defendants Borosky and Reese. Id.  Defendants Borosky and Reese entered the TV room and House continued to request to speak with a lieutenant. Id. Defendants Borosky and Reese ordered House to sit down in the TV room; however, he refused their orders, and continued to demand to speak with a

9

lieutenant Id.  House alleges that Defendants Borosky
and Reese then began making threatening gestures at him
and tackled him, kicking and punching him in the ribs
and face while he was handcuffed. Id.  House claims that
his head was slammed on the floor, and that Defendant
Borosky began choking him. Id.  Other officers then
arrived, and House claims some of those officers also
started kicking him.[2] Id.

After this alleged assault, House was escorted
to the Restricted Housing Unit ("RHU") where he was
strip-searched and placed in an RHU cell. Doc. 52, 3rd
Amended Complaint, ¶ 45.  House alleges that the
officers who escorted him to the RHU regularly worked in
the RHU. Id. ¶ 47.

House then reported the assault by Defendants
Borosky and Reese, and the escort officers and requested
medical attention. Id. ¶¶ 46-47.  House claims he was
denied medical attention by corrections officers and
that Defendants Borosky and Reese subsequently issued a

---

2.  House does not identify those officers.

false misconduct report to justify their actions,
alleging that he had attempted to kick them. Id. ¶ 46.

At some point after he arrived in the RHU, House
alleges that he also reported an assault by Defendant
Barnett. Id. ¶ 47.  According to House, Barnett told him
that he would "not come out of his cell for anything."
Id. House claims that this was in retaliation for
reporting the assault involving Defendant Barnett. Id.
House then alleges in a conclusory fashion that the
"rest of the C/Os conspired on this promise for seven
months." Id.

House also makes claims related to his hair
length.  He alleges that officers told him that he was
not permitted out of his cell because his hair length
violated the grooming policy of the Department of
Corrections and presented a security risk. Id. ¶¶ 57 &
59.  House allegedly was informed that, unless he had a
religious-based hair length exception, he would not be
permitted out of his RHU cell. Id. ¶¶ 49 & 50.  House's
allegation reveal that officers also informed him that

11

his continued confinement in his cell was the result of his refusal to cooperate with RHU strip search procedures. Id. ¶¶ 52, 60 & 65. As a result of being confined to his cell, House contends that he was denied yard time, showers, and access to the RHU law library. Id. ¶¶ 48-55.

The attachment to the third amended complaint reveal that House filed informal requests and formal grievances while confined at SCI-Smithfield.  On January 30, 2014, House filed Grievance 496007-14 regarding the grooming policy[3] of the Department of Corrections. Doc. 52-1, Exhibits, at 11 (Initial Review Response).

------

3.  The grooming policy of the Department of Corrections is set forth in DC-ADM 807, which provides, "Hairstyles of different types will be permitted provided they do not conflict with the facility's procedures for safety, security, identification, and sanitation efforts.: DC-ADM 807 (I)(A)(1). Hair that does not fall below the top of the collar in length is permitted. Id. at (I)(A)(2)(a). Furthermore, hair is to be trimmed to maintain hygiene and safety standards, and those styles that interfere with the effectiveness of safety devices are expressly prohibited.  Id. at (I)(B)(2).  Inmates refusing to comply with the directives set forth in DC-ADM 807 are subject to discipline pursuant to the Department of Corrections' discipline policy, DC-ADM 801.

Defendant Sunderland responded to the grievance on February 6, 2014, by informing House that a hair length exemption was being reviewed for him, but that the security measures in place would continue pending a decision on the exemption. Id.

On April 10, 2014, House directed a request slip to Defendants Grove, Whitesel and Fisher informing them that officers in the RHU were not allowing him out of his RHU cell because he did not have a hair exemption. Id. at 4-6.  Defendant Grove noted that Defendant Sunderland had already responded to the issue adequately, however, Defendants Fisher and Whitesel referred the request slips they had received to Defendant Sunderland for response. Id. House also directed a request slip to Defendant Oliver on June 24, 2014, in which he stated that he remained confined in the RHU cell as a result of his hair length. Id. at 7.

House filed another grievance (Grievance 521374-14) on the issue of hair length, which he ultimately appealed to Defendant Fisher. Id. at 9.  In a decision

issued on August 15, 2014, Defendant Fisher noted that
House continued to refuse to comply with the grooming
standards. Id.  However, Defendant Fisher informed House
that RHU staff would be using handheld metal detectors
to search his hair so that he would be permitted to exit
his cell for yard and showers. Id.  After that decision,
House concedes that he was permitted to exit his cell
and was provided with basic necessities, showers, yard
time and law library access.  Doc. 52, Third Amended
Complaint, ¶¶ 74-75.

House alleges that he lost an appeal in the
Pennsylvania Superior Court and has suffered
"hindrance[s]" in other "open court cases" as a result
of not having access to the RHU law library. Id. ¶ 65.
House claims he continues to suffer pain as a result of
his confinement in the RHU. Id. ¶ 72.  As a result of
not being able to shower while in the RHU, he alleges
that he suffered peeling skin and discoloration of his
skin along his hairline. Id. ¶¶ 67 & 69. He also alleges

14

that he suffered an ear infection as a result of not being able to properly wash his ears. Id., ¶ 68.

Finally, House claims that the Defendants conspired and retaliated against him for seven months because he complained about the alleged assault by Defendants Borosky and Reese on January 25, 2014; that the grooming policy and the claim that his long hair (in dreadlocks) created a security risk because corrections officer could not run their fingers through his hair was merely an excuse to retaliate against him; that the Defendants violated his due process rights because he was not given a hearing relating to the grooming policy prior to being disciplined; and that Defendants actions were racially motivated denying him equal protection, and retaliatory in violations of his First Amendment rights to file grievances and pursue legal proceedings in court.

## **Discussion**

Defendants raise four arguments in support of their motion to dismiss the third amended complaint.

First, Defendant's argue that House's claims against the
Defendants in their official capacities should be
dismissed because those claims are barred by the
Eleventh Amendment.  Second, it argued that House's
claims against Defendants Varner, Fisher, Whitesel,
Oliver and Grove should be dismissed for lack of
personal involvement. Third, the amended complaint
should be dismissed or stricken because it fails to
comply with Federal Rules of Civil Procedure 8 and 20.
Furthermore, the court pursuant to the screening
provisions of the PLRA discerns two additional reason
for dismissal of portions of the third amended
complaint: (1) the conspiracy claims against the
Defendants are insufficient and (2) the claims against
Defendants Varner, Fisher and other supervisory
personnel whose only involvement was in the grievance
process are not viable.  The court will address the
substantive arguments first and then the procedural
arguments relating to Federal Rules of Civil Procedure 8
and 20.

## A.   Official Capacity Claims

Defendants argue that House's claims against them for compensatory and punitive damages in their official capacities should be dismissed.  The court agrees with that argument. A state official sued in his or her official capacity is not a "person" for purposes of § 1983 where the relief sought is monetary damages because the Supreme Court has not construed § 1983 as an abrogation of the states' Eleventh Amendment immunity. Will v. Michigan Department of State Police, 491 U.S. 58, 63-71 (1989). Will clearly precludes actions for damages against state officials acting in their official capacities.  Consequently, to the extent House seeks damages against the Defendants in their official capacities, those claims will be dismissed.

## B.   Conspiracy

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations.  D.R. by L.R. v. Middle Bucks Area

Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992) cert. denied, 506 U.S. 1079 (1993); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989); Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989).  The Court of Appeals for this circuit has further noted that "[a] conspiracy claim must . . . contain supportive factual allegations."  Rose, 871 F.2d at 366.  Moreover, "[t]o plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir. 1989).

The essence of a conspiracy is an agreement or concerted action between individuals. See D.R. by L.R., 972 F.2d at 1377; Durre, 869 F.2d at 545.  Consequently, a plaintiff must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive

plaintiff of a protected federal right.  Id.; Rose, 871 F.2d at 366; Young, 926 F.2d at 1405 n.16; Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 539 (E.D. Pa. 1982).  Where a civil rights conspiracy is alleged there must be some specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity.  Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985).  A plaintiff cannot rely on subjective suspicions and unsupported speculation. Young v. Kann, 926 F2d 1396, 1405 n.16 (3d Cir. 1991).

Viewing the third amended complaint in the light most favorable to House, it is clear that House has failed to state a viable conspiracy claim against any of the Defendants.  There are no averments of fact in the complaint that reasonably suggest the presence of an agreement or concerted activity between Defendants to violate House's civil rights.  House's vague and conclusory allegations of a conspiracy fail to satisfying the pleading requirements of Twombly and Iqbal.

## C. Personal Involvement

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements:  1) that the conduct complained of was committed by a person acting under color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Moreover, in addressing whether a viable claim has been stated against a defendant the court must assess whether House has sufficiently alleged personal involvement of the defendant in the act which he claims violated his rights.  Liability may not be imposed under § 1983 on the traditional standards of respondeat superior.  Capone v. Marinelli, 868 F.2d 102, 106 (3d Cir. 1989) (citing Hampton v. Holmesburg Prison Officials, 546 F.2d 1017, 1082 (3d Cir. 1976)).  In

20

Capone, the court noted "that supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct."  868 F.2d at 106 n.7.

With respect to defendants Varner, Fisher, Whitesel, Oliver and Grove, the court discerns no allegations in the complaint that they were involved in any conduct which violated House's constitutional rights. There only involvement was with respect to the handling of House's grievances and appeals relating thereto.  Such involvement is insufficient as a matter of law to render those defendants liable.  "[T]he failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation." Rauso v. Vaughn, Civil No. 96-6977, 2000 WL 873285, at *16 (E.D.Pa., June 26, 2000). See also Overholt v. Unibase Data Entry, Inc., 221 F.3d 1335 (Table), 2000 WL 799760, at *3 (6th Cir.2000) ("The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent

21

constitutional right to an effective prison grievance procedure. Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation.") (citations omitted); <u>Mitchell v. Keane</u>, 974 F.Supp. 332, 343 (S.D.N.Y.1997) ("it appears from the submissions before the court that Mitchell filed grievances, had them referred to a prison official, and received a letter reporting that there was no evidence to substantiate his complaints. Mitchell's dissatisfaction with this response does not constitute a cause of action."); <u>Caldwell v. Beard</u>, Civil No. 2:07-CV-727, 2008 WL 2887810, at *4 (W.D.Pa. July 23, 2008) ("Such a premise for liability [i.e., for performing a role in the grievance process] fails as a matter of law."), aff'd,--- Fed.Appx. ----, 2009 WL 1111545 (3d Cir. April 27, 2009); <u>Caldwell v. Hall</u>, Civil No. 97-8069, 2000 WL 343229, at *2 (E.D.Pa. March 31, 2000) ("The failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation.");

<u>Orrs v. Comings</u>, Civil No. 92-6442, 1993 WL 418361, at
*2 (E.D.Pa. Oct.13, 1993) ("But an allegation that a
defendant failed to act on a grievance or complaint does
not state a Section 1983 claim."); <u>Jefferson v. Wolfe</u>,
Civil No. 04-44, 2006 WL 1947721, at *17 (W.D. Pa. July
11, 2006) ("These allegations [of denying grievances or
grievance appeals] are insufficient to establish such
Defendants' personal involvement in the challenged
conduct under Section 1983. <u>See</u> <u>Watkins v. Horn</u>, 1997 WL
566080 at * 4 (E.D.Pa..[sic] 1997) (concurrence in an
administrative appeal process is not sufficient to
establish personal involvement)"). Consequently, House
claims against Varner, Fisher, Whitesel, Oliver and
Grove are not viable and the third amended complaint as
it relates to them will be dismissed.

**D.    Federal Rules of Civil Procedure 8 and 20.**

Federal Rule of Civil Procedure 8(d) states, in
pertinent part, that "[e]ach allegation must be simple,
concise and direct." Federal Rule of Civil Procedure

20, titled Permissive Joinder of Parties, in pertinent

part, reads:

> (a) Persons Who May Join and Be Joined.
>
>    *    *    *    *    *    *    *    *    *
>
> (2) Defendants. Persons . . . may be joined in
> one action as defendants if:
>
>> (A) any right to relief is asserted against
>> them jointly, severally, or in the
>> alternative with respect to or arising out
>> of the same transaction, occurrence, or
>> series of transactions or occurrences; and
>>
>> (B) any question of law or fact common to
>> all defendants will arise in the action.

Fed.R.Civ.P. 20(a)(2). Analyzing Rule 20 reveals that it

defines the limits of defendants that can be jointed in

a single action when:  "(A) any right to relief is

asserted against [the defendants] jointly, severally, or

in the alternative with respect to or arising out of the

same transaction, occurrence, or series of transactions

or occurrences; and (B) any question of law or fact

common to all defendants will arise in the action.  See

Mosley v. General Motors Corp., 497 F.2d 1330, 1333 (8th

Cir.1974). The requirements prescribed by Rule 20(a) are
to be liberally construed in the interest of convenience
and judicial economy. <u>Salley v. Wetzel</u>, 2013 WL 3157588
(M.D.Pa. 2013), <u>aff'd</u>, 565 Fed. Appx. 77 (3d Cir. 2014).
"However, the policy of liberal application of Rule 20
is not a license to join unrelated claims and defendants
in one lawsuit." <u>Id.</u> at *3 (citing <u>Pruden v. SCI Camp
Hill</u>, 252 Fed. Appx. 436 (3d Cir. 2007).

       As submitted, it is clear that House's third
amended complaint is in violation of both Rules 8 and
20.  The complaint names thirty-six (36) individual
defendants, one located at the Central Office of the
Department of Corrections and 35 located at SCI-
Smithfield, and contains numerous claims by House
spanning a period of 7 months while he was confined at
SCI-Smithfield as set forth above.  Many of the claims
alleged by House  address different matters including,
*inter alia*, the use of excessive force by corrections
officers at SCI-Smithfield, fabrication of misconduct
charges, denial of medical care,  and denial of access

25

to the courts.  There is no indication that the claims against the defendants arise out of the same transaction, occurrence, or series of transactions or occurrences, or have a common question of law or fact common to all defendants.  The only common thread House's allegations share is they allegedly occurred while he was incarcerated at SCI-Smithfield during a period of 7 months.

While the court will grant House leave to file a fourth amended complaint, it will not permit him to raise a hodgepodge of claims.  The amended complaint must comply with Rule 20 and involve only related claims or parties.  Failure to file a proper fourth amended complaint will result in dismissal of all but the excessive force claims leveled against Defendants Borosky and Reese.

There also exists another important reason for requiring compliance with Rule 20.  The Prison Litigation Reform Act of 1995 ("PLRA") substantially changed the judicial treatment of civil rights actions

by state and federal prisoners.  One major change
brought about by the PLRA was that the prisoner must
ultimately pay the full filing fee in a non-habeas
action.  Allowing a prisoner to include a plethora of
separate, independent claims, (although occurring during
his confinement at one particular penal institution)
would circumvent the filing fee requirements of the PLRA
and the intent of Rule 20 to only allow related claims
to be joined.

    The court hereby forewarns House that his fourth
"amended complaint must be complete in all respects.  It
must be a new pleading which stands by itself as an
adequate complaint without reference to the [third
amended] complaint already filed." <u>Young v. Keohane</u>, 809
F.Supp. 1185 (M.D. Pa. 1992).  The fourth amended
complaint may not be another narrative of the
plaintiff's experiences within the Pennsylvania
corrections system.  If the fourth amended complaint
includes a variety of unrelated claims, the court will

dismiss all but the excessive force claims against Defendants Borosky and Reese.

  An appropriate order will be entered.


    s/Sylvia H. Rambo
    _____
    United States District Judge


Dated: February 1, 2016